**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

PAMELA L. WHITE,                          *

    Plaintiff,                          *

v.                                        *          Civil Action No. CJC-25-2108

FRANK BISIGNANO,                          *
COMMISSIONER OF
SOCIAL SECURITY,                          *

    Defendant.                          *

**MEMORANDUM OPINION**

Plaintiff/Claimant Pamela L. White petitions this Court to review the Commissioner of

the Social Security Administration's (the "Commissioner") final decision involving her claims

for disability insurance benefits ("DIB") and supplemental security income ("SSI"). ECF No. 1.

Pending before the Court is White's Motion for Summary Judgment or, in the Alternative,

Motion for Remand. ECF No. 9. The Court has considered the Motion, the record, and the

parties' briefs. ECF Nos. 6, 9, 12. No hearing is necessary. Loc. R. 105.6 (D. Md. 2025). For the

reasons that follow, the Court affirms the judgment of the Social Security Administration and

denies the Motion.

**PROCEDURAL BACKGROUND**

On December 19, 2022, White applied for DIB and SSI under Titles II and XVI of the

Social Security Act, respectively. R. 62, 69. Her claims were denied initially and on

reconsideration. R. 99–104, 107–22. On White's request, an Administrative Law Judge (ALJ)

held a hearing to review her claims. R. 32–59, 123–24. Following the hearing, the ALJ issued a

decision on July 26, 2024, in which the ALJ found that White was not disabled. R. 14–31. White

requested that the Social Security Appeals Council review the ALJ's decision. R. 180–81. On June 11, 2025, the Appeals Council denied White's request for review, rendering the ALJ's decision the final, reviewable decision of the Social Security Administration. R. 1–6. White then timely petitioned for judicial review in this Court on July 1, 2025. ECF No. 1.

## THE ALJ'S DECISION

A claimant is legally disabled under the Social Security Act if they are unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a) (DIB and SSI provisions). The ALJ must conduct a five-step sequential evaluation to determine if a claimant is disabled. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "For the first four steps, the burden lies with the claimant; at step five, it shifts to the Commissioner." *Thomas v. Berryhill*, 916 F.3d 307, 310 (4th Cir. 2019), *as amended* (Feb. 22, 2019). The ALJ reviews whether the claimant "(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." *Hancock*, 667 F.3d at 472. Prior to steps four and five, the ALJ must determine a claimant's Residual Functional Capacity ("RFC"), which is the most work a claimant can do despite their physical and mental limitations. *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 254 (4th Cir. 2017).

The ALJ here conducted the sequential evaluation as follows. At step one, the ALJ determined that White had "not engaged in substantial gainful activity since November 28, 2022, the alleged onset date." R. 19. At step two, the ALJ found that White had the following severe

impairments: "left frozen shoulder syndrome, left carpal tunnel syndrome, left cubital tunnel syndrome, and digital nerve injury to the left hand." R. 20. The ALJ also found that White had the following non-severe impairments: status post left breast lumpectomy, status post sleeve gastrectomy, status post cholecystectomy, status post craniotomy, migraines, cervical spinal stenosis with radiculopathy, degenerative disc disease of the lumbar spine, hypothyroidism, hypertension, gastroesophageal reflux disease, COPD, PTSD, major depressive disorder, and anxiety. *See* R. 20–22; ECF No. 9-1 at 13. At step three, the ALJ determined that White did not "have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." R. 22. The ALJ further determined that White had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift no more than 5 pounds occasionally with the non-dominant left upper extremity. She can occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasionally kneel or crouch; and never crawl. She can occasionally handle with the non-dominant left upper extremity. She cannot finger or feel with the nondominant left upper extremity. She can occasionally push/pull with the non-dominant left upper extremity. She must avoid concentrated exposure to extreme temperatures and hazards.

R. 22–23. At step four, the ALJ determined that White was "capable of performing past relevant work as a post office supervisor." R. 26 (emphasis removed). As a result, the ALJ concluded that White was not disabled without reaching step five. R. 26.

## STANDARD OF REVIEW

The Court will affirm the ALJ's decision if the ALJ's factual findings are "supported by substantial evidence and were reached through application of the correct legal standard." *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 353 (4th Cir. 2023) (citation omitted); 42 U.S.C. § 405(g). An ALJ's decision satisfies the substantial evidence standard if it contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

3

*Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted). In conducting this review, the Court determines "not just 'whether the ALJ examined all relevant evidence' but also whether the ALJ 'offered a sufficient rationale in crediting certain evidence and discrediting other evidence.'" *Drumgold v. Comm'r of Soc. Sec.*, 144 F.4th 596, 605 (4th Cir. 2025) (citation omitted).

## DISCUSSION

White contends that the ALJ erred because there is not substantial evidence to support either the ALJ's step two assessment or the ALJ's RFC assessment. ECF No. 9-1 at 12–18. The Court addresses each contention in turn.

I.    **The ALJ's Assessment at Step Two of The Sequential Evaluation Process Is Supported by Substantial Evidence.**

White first argues that there is not substantial evidence to support the ALJ's finding that several of White's impairments were either non-severe or not medically determinable at step two of the sequential evaluation process. ECF No. 9-1 at 12–14. At step two, a claimant "bears the burden of production and proof to show that [s]he suffers from a severe medically determinable impairment." *Bowers v. Colvin*, 628 F. App'x 169, 171 (4th Cir. 2015). Thus, a claimant fails to meet this burden if the claimant's impairment is either non-severe or not medically determinable. The Court turns to each category below.

A.    **Substantial evidence supports that some of White's impairments were non-severe.**

White argues that the ALJ's finding that some of White's physical impairments as well as her mental impairments were non-severe is not supported by substantial evidence. ECF No. 9-1 at 13–14. An impairment is non-severe if it "does not significantly limit [a claimant's] physical

or mental ability to do basic work activities." 20 C.F.R. §§ 404.1522(a), 416.922(a). The Court addresses White's physical impairments before turning to her mental impairments.

### 1.      Non-severe physical impairments

The ALJ found that White's status post sleeve gastrectomy, status post cholecystectomy, migraines, cervical spinal stenosis with radiculopathy, degenerative disc disease of the lumbar spine, hypothyroidism, hypertension, gastroesophageal reflux disease, and COPD were non-severe impairments. *See* R. 20. The question is whether these physical impairments significantly limited White's abilities.

On review of the record, the ALJ's finding that these impairments did not significantly limit White's abilities is supported by substantial evidence for three reasons. First, for those impairments in which the record detailed the development of White's symptoms, the ALJ traced that development and explained why the most recent symptoms did not significantly limit White's abilities. *See, e.g.*, R. 20 (finding that White's gastrointestinal impairments were stable following dieting and prescribed medications). Second, the ALJ identified and specifically discussed particular impairments in which the record contained gaps in the existence or severity of White's limitations. *See, e.g.*, R. 20 (discounting White's cervical disc disorder and headaches because, following an MRI, there was no evidence about the alleged limitations caused by these impairments). Third, for those impairments in which the record contained little evidence of developing symptoms, the ALJ explained how the impairment never significantly limited White's abilities. *See, e.g.*, R. 20 (pointing out that treatment notes showed White's hypertension was stable). These findings are adequate to conclude that White's physical impairments did not significantly limit her abilities. Accordingly, substantial evidence supports the ALJ's finding that the impairments listed above were non-severe.

### 2.    Non-severe mental impairments

Second, White argues that the ALJ's finding that her PTSD, major depressive disorder, and anxiety were non-severe is not supported by substantial evidence. ECF No. 9-1 at 14. To determine whether a claimant's mental impairments are severe, an ALJ must employ the so-called "special technique." 20 C.F.R. §§ 404.1520a(a), 416.920a(a). Using the special technique, an ALJ rates the claimant's ability to "function independently, appropriately, effectively, and on a sustained basis" in four areas: "[u]nderstand[ing], remember[ing], or apply[ing] information; interact[ing] with others; concentrate[ing], persist[ing], or maintain[ing] pace; and adapt[ing] or manag[ing] oneself." *Id.* §§ 404.1520a(c)(2)–(3), 416.920a(c)(2)–(3). The ALJ rates the claimant's limitations in each of the four areas on a five-point scale: "[n]one, mild, moderate, marked, and extreme." *Id.* §§ 404.1520a(c)(4), 416.920a(c)(4). As relevant here, if an ALJ rates all four functional areas as either "none" or "mild," the ALJ "will generally conclude that [the claimant's] impairment(s) [are] no[n-]severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1). Thus, the issue is whether the ALJ's rating of White's abilities in the four functional areas supported a finding that White's mental impairments were non-severe.

Here, the ALJ determined that White had no limitation in understanding, remembering, and applying information, a mild limitation in interacting with others, a mild limitation in concentrating, persisting or maintaining pace, and no limitation in adapting or managing oneself. R. 21. As a result, the ALJ concluded that White's mental impairments "considered singly and in combination, do not cause more than minimal limitation in [White's] ability to perform basic mental work activities and are therefore non[-]severe." R. 21.

Substantial evidence supports the ALJ's findings. The ALJ supported her findings in each functional area by citing consultative exam notes and the subjective complaints from White's hearing testimony. R. 21. The ALJ resolved conflicts in the evidence by pointing out the conflicts and explaining why the medical evidence indicated that White's mental impairments did not significantly limit her abilities and was more persuasive than White's testimony. *See, e.g.*, R. 21 (finding mild limitation in concentrating, persisting or maintaining pace because although White testified to problems focusing on tasks, medical exams showed that her attention and concentration were intact). The ALJ's special technique findings were adequate to conclude that White's mental impairments did not significantly limit her abilities.

In addition to the special technique, the ALJ's evaluation of the medical opinions in the record bolsters the conclusion that the ALJ's mental impairment findings were supported by substantial evidence. *See Rosina v. Colvin*, No. 7:12CV399, 2014 WL 690647, at *6 (W.D. Va. Feb. 21, 2014) (finding that medical opinions "likewise provide support to the ALJ's conclusion that [claimant's] mental impairments were non-severe"). Of the medical experts that opined that White had no more than mild mental limitations, the ALJ found these opinions persuasive. *See* R. 25 (discussing the opinions of Hillary Lake, M.D. and E. Roskes, M.D.). Of the medical experts that opined that White had mild, marked, or extreme mental limitations, the ALJ found these opinions unpersuasive because they were neither supported by, nor consistent with, the record. *See* R. 25–26 (discussing the opinions of Adedoyin Sobowale, CRNP and Thomas Biondo, M.D.). Although White acknowledges some of the opinions of the medical experts, ECF No. 9-1 at 17, she does not challenge the ALJ's evaluation of these opinions. Accordingly, the ALJ's evaluation of the medical opinions reinforces the ALJ's finding that White's mental impairments were non-severe.

For these reasons, substantial evidence supports the ALJ's finding that White's mental impairments, and some of White's physical impairments, were non-severe.

**B.      Substantial evidence supports that some of White's impairments were not medically determinable.**

Next, White contends that the ALJ's finding that some of her impairments were not medically determinable is not supported by substantial evidence. *See* ECF No. 9-1 at 13. An impairment is not medically determinable if the claimant fails to demonstrate that "anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques" caused the impairment. 20 C.F.R. §§ 404.1521, 416.921.

Here, substantial evidence supports the ALJ's finding that White's alleged impairments of status post left breast lumpectomy and status post craniotomy were not medically determinable. As to White's status post left breast lumpectomy, the ALJ explained (1) that White underwent a biopsy that revealed "only atypical ductal hyperplasia, no malignancy" that would suggest cancer, and (2) that White presented no objective evidence of a history of breast cancer. R. 22. As to White's status post craniotomy, the ALJ pointed out that White did not present any objective medical evidence of the craniotomy such as treatment notes following the surgery. R. 22. Because the ALJ pointed out the absence of evidence of "medically acceptable … diagnostic techniques" needed to prove the existence of these two impairments, the ALJ's findings are supported by substantial evidence. 20 C.F.R. §§ 404.1521, 416.921.

For these reasons, substantial evidence supports the ALJ's finding that the impairments discussed above are either non-severe or not medically determinable.

**II.      The ALJ's RFC Assessment Is Supported by Substantial Evidence.**

A claimant's RFC is defined as the most work that a claimant can perform despite the claimant's limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). To assess a claimant's RFC,

an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas*, 916 F.3d at 311 (citation omitted). While the ALJ must consider all of a claimant's physical and mental impairments, the ALJ need not discuss every piece of evidence relating to those impairments. *See id.* at 312 ("To be sure, 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision.'" (quoting *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014))).

White argues that substantial evidence does not support the ALJ's RFC assessment for several reasons: (1) that there is not substantial evidence to support that White can occasionally handle with her left upper extremity; (2) that there is not substantial evidence to support that White could perform light jobs; (3) that the ALJ erred by omitting mental limitations from the RFC; and (4) that the ALJ erred by omitting a time off task limitation. ECF No. 9-1 at 15–18. The Court addresses each in turn.

### A.      Substantial evidence supports the ALJ's finding that White can occasionally handle with her left upper extremity.

White contends that there is not substantial evidence to support that White can occasionally handle with her left upper extremity. ECF No. 9-1 at 15. The Court disagrees.

In the ALJ's decision, the ALJ traced the path of White's medical history regarding her left upper extremity. The ALJ noted White's fall in March 2020 as the event that incited the limitations in her left upper extremity. R. 23. The ALJ described White's subjective statements in which she reported that she could drive, prepare simple meals, shop, use the internet, and complete forms on her own, "all of which require some use of the arms and hands." R. 24. The ALJ acknowledged a consultative exam in which her left-hand grip strength was rated 3/5, that there was tenderness in her left hand, and that she could not extend the 4th and 5th fingers of her

left hand. R. 24. The ALJ also discussed White's medical exam with Robert Macht, M.D., who diagnosed her with "traumatic injury with contusion and laceration of left hand with digital nerve injury." R. 24. Based on this medical exam, the ALJ found that White's "signs, symptoms, and test results were consistent with left frozen shoulder syndrome, left carpal tunnel syndrome, and left cubital tunnel syndrome." R. 24.

After reviewing White's medical history, the ALJ evaluated the medical opinions that analyzed White's left upper extremity. The ALJ found partially persuasive the medical opinions of the state agency medical consultants M. Lowen, M.D., and Ann Williams, M.D., who opined in part that White had constant limitations on handling, fingering, and feeling on her left upper extremity. R. 24. The ALJ disagreed with these opinions because White's daily activities indicated less serious limitations. R. 24. The ALJ also found partially persuasive the medical opinion of Rizwana Ahmed, FNP, who opined, in part, that White could lift up to 1 pound frequently and 2-3 pounds occasionally "due to left hand paralysis and neuropathy." R. 25. The ALJ found unpersuasive the opinion of Thomas Biondo, M.D., who opined, in part, that White was limited in reaching, handling, feeling, pushing, pulling, and moving machinery. R. 25. The ALJ discounted this opinion because Dr. Biondo failed to quantify the extent of White's limitations in these areas. R. 25. Thus, through the ALJ's evaluation of the medical opinions, the ALJ recognized that White had significant limitations in her left upper extremity, but that they were not as extreme as some of the opinions given by the medical experts.

Based on the medical history and opinions regarding White's left upper extremity, the ALJ found the following:

> [G]iven the 3/5 strength on the left side, I find that [White] can lift no more than 5 pounds occasionally with the non[-]dominant left upper extremity and only occasionally handle with the non-dominant left upper extremity …. Additionally, to more fully account for the decreased sensation at the left hand, I find that she

> cannot finger or feel with the non-dominant left upper extremity …. Next, given her left shoulder pain, I find that she can occasionally push/pull with the non-dominant left upper extremity ….

R. 24.

Considering the record and the ALJ's findings, the ALJ's determination that White could occasionally handle with her left upper extremity is supported by substantial evidence. The ALJ considered White's subjective complaints, medical history, and the opinions of the medical experts in determining whether White required RFC limitations to her left upper extremity. From this review, the ALJ determined that White was limited, but not unable, to use her left upper extremity. The ALJ accommodated this limitation by including RFC limitations for lifting and handling, fingering or feeling, and pushing or pulling with the left upper extremity. As a result, the ALJ's RFC assessment was adequate to conclude that White could occasionally handle with the left upper extremity.

The Court's conclusion is not altered by White's argument that she had limited use of her left hand and that the record does not support the ALJ's finding to the contrary. *See* ECF No. 9-1 at 15–16. The ALJ cited much of the same evidence as White does in her brief but reached a different conclusion about White's ability to handle. The Court cannot, as White requests, reweigh this "conflicting evidence … or substitute its judgment for that of the agency" in determining whether the ALJ's findings are supported by substantial evidence. *Hultz v. Bisignano*, 162 F.4th 111, 120 (4th Cir. 2025) (citation omitted). Accordingly, the Court rejects White's argument.

Based on the ALJ's analysis, substantial evidence supports the ALJ's finding that White could occasionally handle with the left upper extremity.

B.      **Substantial evidence supports that White could perform light work.**

White next argues that there is not substantial evidence to support White's ability to perform light work. In particular, White alleges that her neck and lower back pain prevent her from performing light work. ECF No. 9-1 at 17. White is incorrect because the ALJ's decision adequately considered and accounted for White's neck and lower back pain as non-severe such that limiting White to light work was appropriate.

The Social Security Regulations define light work as the following:

> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds…. [A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. §§ 404.1567(b), 416.967(b). The question is whether the ALJ properly considered White's neck and lower back issues such that substantial evidence supports limiting White to light work.

The Regulations require the ALJ to "*consider* all of [a claimant's] medically determinable impairments . . . including [a claimant's] medically determinable impairments that are not 'severe,'" when assessing the RFC. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) (emphasis added); *Thomas*, 916 F.3d at 311. An ALJ satisfies the requirement to consider a claimant's non-severe impairments in the RFC assessment if they address those impairments at step two of the sequential evaluation process. *See Britt v. Saul*, 860 F. App'x 256, 262 (4th Cir. 2021) (holding that ALJ need only "*consider* … non-severe impairments" when assessing the RFC and that an ALJ sufficiently considers them if they are "addressed under step two").

Here, substantial evidence supports the ALJ's finding that White could perform light work despite her neck and lower back issues. Although the ALJ does not directly address White's neck and lower back issues in the RFC assessment, the ALJ properly reviewed these

12

issues at step two of the sequential evaluation process. At step two, the ALJ analyzed White's lower back problems, headaches, and neck pain and found that they were non-severe impairments. R. 20 (detailing "mild degenerative changes" in White's spine and a lack of evidence supporting the severity of White's headaches and neck pain). As discussed above, substantial evidence supports the ALJ's finding that these impairments were non-severe. *See supra* Section I.A.1; R. 20. Thus, because the ALJ found White's neck and lower back problems were non-severe impairments at step two, substantial evidence supports that White can perform light work despite these impairments. *See Britt*, 860 F. App'x at 262 (concluding that the ALJ's step two analysis "tells us what impact these limitations had in the [RFC] analysis").

**C.      The ALJ did not err by omitting mental limitations from the RFC.**

White argues that the ALJ erred by omitting limitations for White's mental impairments in the RFC. ECF No. 9-1 at 17. Courts in this District generally find, however, that an ALJ is not required to include a mental limitation in the RFC if the ALJ determines that the claimant has only a mild limitation in a mental function. *See, e.g.*, *Kenneth C. v. Kijakazi*, Civil Action No. BAH-22-2936, 2023 WL 5721641, at *4 (D. Md. Sept. 5, 2023) ("[W]hen a claimant possesses only a 'mild' limitation in an area of mental functioning … the ALJ is not required to craft an RFC provision to address the limitation."); *Moyers v. Comm'r, Soc. Sec. Admin.*, Civil Action No. SAG-17-357, 2018 WL 1471459, at *4 (D. Md. Jan. 5, 2018) (same); *Amanda C. v. Dudek*, Civil Action No. CDA-23-2877, 2025 WL 722691, at *7 (D. Md. Mar. 6, 2025) (same). Here, the ALJ found White had no more than a mild limitation in each of the four areas of mental functioning. R. 21; *see also supra* Section I.A.2. As a result, the ALJ was not required to include a mental limitation in the RFC and did not err by omitting such a limitation.

13

D.      **The ALJ did not err by omitting a time off-task limitation.**

White also argues that the ALJ erred in omitting a time off task limitation in the RFC. White contends that her "left upper extremity, neck, lower back, migraines, PTSD, [and] anxiety and depression[] would affect her ability to concentrate and focus and cause her to be off task … well beyond the time period allowed for normal breaks, and for well over 15 percent of the workday." ECF No. 9-1 at 18.

The Court rejects this argument for two reasons. First, the ALJ specifically addressed White's ability to concentrate, persist, or maintain pace and found she had only a mild limitation; thus, the ALJ was not required to include a corresponding RFC limitation to address such an impairment. *See supra* Section I.A.2, II.C. Second, the ALJ more broadly accounted for the severe and non-severe impairments White lists by either including a corresponding limitation in the RFC (in the case of the left upper extremity) or explaining why the impairments did not significantly limit White's abilities such that a corresponding RFC limitation was unnecessary (in the case of the neck, lower back, migraines, PTSD, and anxiety and depression). *See supra* Sections I, II.A–B; *see also Amanda C.*, 2025 WL 722691, at *7 ("[I]n many, if not most cases, there will be no functional limitations from a non[-]severe impairment." (citation omitted)). Thus, because the ALJ properly accounted for how White's severe and non-severe impairments combine to limit her RFC, the Court finds that the ALJ did not err by omitting a time off task limitation from the RFC.

Substantial evidence supports the ALJ's RFC assessment because there is substantial evidence to show that White can handle with her left upper extremity, that there is substantial evidence to show that White could perform light jobs, that the ALJ did not err by omitting

14

mental limitations from the RFC, and that the ALJ did not err by omitting a time off task limitation.

The ALJ's step two assessment and RFC assessment are supported by substantial evidence. Therefore, the Court affirms the ALJ's judgment.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the Social Security Administration's judgment is AFFIRMED. White's Motion for Summary Judgment or, in the Alternative, Motion for Remand, is DENIED. The clerk is directed to CLOSE this case. A separate order follows.

Date: July 24, 2026

_____/s/_____
Chelsea J. Crawford
United States Magistrate Judge